1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MARGARET MAREALLE, on behalf of
M.M.B., a minor,

9

Plaintiff,

10

v.

11

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

12

13

Defendant.

Case No. C15-1130-TSZ-MAT

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY
DISABILITY APPEAL

14    Margaret Marealle, on behalf of her minor child, M.M.B., seeks judicial review of the final

15  decision of the Commissioner of the Social Security Administration (Commissioner).   The

16  Commissioner denied plaintiff's application for supplemental security income (SSI) child's

17  benefits after a hearing before an Administrative Law Judge (ALJ).   Having considered the

18  ALJ's decision, the administrative record (AR), and all memoranda of record, the Court

19  recommends the Commissioner's decision be AFFIRMED.

20                      **FACTS AND PROCEDURAL HISTORY**

21    Plaintiff was born on XXXX, 2000.[1]  (AR 25.)  He was a school-age child on September

22

23
_____
[1] The Court hereinafter refers to M.M.B. as plaintiff.  Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION - 1

1  9, 2010, the date the application was filed and remained a school-age child through the hearing

2  and decision date.  (AR 22, 25.)

3      Plaintiff filed an SSI application on September 9, 2010, alleging disability beginning July

4  14, 2000.  (AR 22.)  His claim was denied initially and on reconsideration.

5      On January 3, 2013, ALJ Stephanie Martz held a hearing, taking testimony from plaintiff

6  and from Kenneth N. Asher, Ph.D., an impartial medical expert.  (AR 22.)  After the hearing,

7  additional exhibits were admitted to the record. (AR 344-57, 634-64.)  On February 19, 2013, the

8  ALJ issued a decision finding plaintiff not disabled.  (AR 22-37.)

9      Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on

10 August 4, 2014 (AR 4-9), making the ALJ's decision the final decision of the Commissioner.

11 Plaintiff then appealed this final decision of the Commissioner to this Court.

12                          **JURISDICTION**

13     The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g)

14 and 1383(c)(3).

15                          **DISCUSSION**

16     This case involves review of the denial of application for SSI child benefits.  "An

17 individual under the age of 18 shall be considered disabled . . . if that individual has a medically

18 determinable physical or mental impairment, which results in marked and severe functional

19 limitations, and . . . which has lasted or can be expected to last for a continuous period of not less

20 than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(C)(i).

21     The social security regulations set forth a three-step sequential evaluation process for

22 determining whether a child is disabled.  *See* 20 C.F.R. § 416.924.  At step one, it must be

23 determined whether the claimant is performing substantial gainful activity.  The ALJ found

REPORT AND RECOMMENDATION - 2

1  plaintiff was ten years old at the time he filed for benefits, is currently a school-age child, and

2  has not engaged in substantial gainful activity since the application date.  (AR 25.)

3        If the claimant is not performing substantial gainful activity, it must be determined, at

4  step two, whether the claimant has a "severe" medically determinable impairment or

5  combination thereof.  The ALJ found plaintiff has the following severe impairments:  pervasive

6  development disorder, not otherwise specified (NOS), attention deficit hyperactivity disorder

7  (ADHD), learning disorder, and anxiety disorder.

8        If the claimant has a severe impairment or combination of impairments that meets the

9  duration requirement, it must be determined at step three whether the impairment meets,

10  medically equals, or functionally equals a listed impairment in 20 C.F.R. § 404, Part B,

11  Appendix 1, Subpart P.  If the impairment meets or medically equals a listing, the claimant will

12  be found disabled.  If the impairment does not meet or medically equal a listed impairment, it

13  must be determined whether the impairment *functionally* equals a listed impairment by assessing

14  the child's limitations in six broad areas of functioning called "domains."  *See* 20 C.F.R. §

15  416.926a.  At step three, the ALJ found plaintiff did not have an impairment or combination of

16  impairments that met, medically equaled, or functionally equaled a listing.

17        This Court's review of the ALJ's decision is limited to whether the decision is in

18  accordance with the law and the findings supported by substantial evidence in the record as a

19  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792

20  F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is

21  unsupported by substantial evidence in the administrative record or is based on legal error.")

22  Substantial evidence means more than a scintilla, but less than a preponderance; it means such

23  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 3

1   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational

2   interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.

3   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4          Plaintiff argues the ALJ erred in her step three conclusion regarding Listing 112.10 for

5   autistic or pervasive development disorder,[2] in rejecting the opinion of Dr. Lewis Humphreys,

6   and in her consideration of evidence associated with his use of Adderall.   He requests remand for

7   further proceedings.   The Commissioner argues the ALJ's decision has the support of substantial

8   evidence and should be affirmed.

9                                                 Listing 112.10

10         An impairment "meets" a listed impairment if it satisfies all of the criteria described in

11  the Listing.   20 C.F.R. § 416.925(c)(3).   An impairment "medically equals" a listed impairment

12  "if it is at least equal in severity and duration to the criteria of any listed impairment."   §

13  416.926(a).   An impairment "functionally equals" a listed impairment if it results in marked

14  limitations in at least two of six functional domains or an extreme limitation in at least one

15  domain.   § 416.926a(a).   A determination of functional equivalence is the responsibility of the

16  state agency medical or psychological staff at the initial and reconsideration levels, of an ALJ at

17  the hearing level, and of the Appeals Council at that level.   20 C.F.R. § 416.926a(n).   Plaintiff

18  here avers error in the ALJ's failure to find his pervasive development disorder meets or is

19  functionally equivalent to Listing 112.10.[3]

20

21         [2] While plaintiff refers to Listing 12.10, the listing for adults, the Court addresses Listing 112.00,
the listing for children.

22         [3] Plaintiff does not challenge the ALJ's finding that he does not meet the requirements of Listing

23  112.10 for Autistic Disorder, or the requirements of Listing 112.11 for ADHD.   (*See* AR 25-26 (finding,
with respect to Listing 112.11, that the evidence showed cognitive function in the low average range, with
full scale IQ scores of 87 and 83; moderate social impairment, with reports of parents and teachers

REPORT AND RECOMMENDATION - 4

A.      Meeting Requirements

In order to meet the requirements of Listing 112.10, plaintiff must establish both of the following "A" criteria: (a) Qualitative deficits in the development of reciprocal social interaction; and (b) Qualitative deficits in verbal and nonverbal communication and in imaginative activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.10.  Plaintiff also bears the burden of establishing "marked" impairment or difficulty in at least two of the following four "B" criteria: (a) age-appropriate cognitive/communicative function; (b) age-appropriate social functioning; (c) age-appropriate personal functioning; or (d) maintaining concentration, persistence, or pace.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 112.02(B)(2), 112.10(B).

The ALJ found plaintiff did not meet the "A" criteria for Listing 112.10 because he does not have qualitative deficits in development of reciprocal social interaction, and qualitative deficits in verbal and nonverbal communication and imaginative activity.  (AR 25.)  She found plaintiff did not meet the "B" criteria because the evidence established only one marked impairment – in attending to and completing tasks, which may translate to marked difficulties in maintaining concentration, persistence, and pace – rather than the two marked impairments required.

As observed by the Commissioner, plaintiff bases his contention he met the criteria for Listing 112.10 on the opinions expressed by Dr. Humphreys in a July 11, 2012 letter.  His argument is, thus, dependent on his assignment of error in the consideration of Dr. Humphreys' opinions.  As described below, the Court finds no error in relation to Dr. Humphreys and no

---

indicating moderate interference with social interactions across settings, and plaintiff's testimony he maintained two or three social relationships, participated in boy scouting activities, and did not engage in disputes with other students at school; and moderate impairment in personal functioning, given that, while his mother reported he had problems sleeping in his own room, his teacher indicated he had no observed difficulties with self-care.)

REPORT AND RECOMMENDATION - 5

corresponding error in the ALJ's conclusion as to Listing 112.10.

Dr. Humphreys examined plaintiff in November and December 2011 for possible autism spectrum disorder.  (AR 811-13 and AR 806-10.)   He initially diagnosed plaintiff with learning disorder, NOS, and ADHD, and assigned a global assessment of functioning (GAF) score of 65 (AR 813), indicating he had "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).[4]   Dr. Humphreys thereafter received records from plaintiff's school, conducted an individual assessment, administered an Autism Diagnostic Interview-Revised (ADI-R) with plaintiff's parents, and obtained Social Responsiveness Scale (SRS) responses from plaintiff's parents and his teacher.  (AR 806-10.)  Dr. Humphreys concluded that, because there was not a clear total of the necessary diagnostic criteria for a diagnosis of Autistic Disorder, a diagnosis of pervasive development disorder, NOS, provided the best fit.  (AR 809.) He assigned a GAF of 60 (AR 810), reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning.  DSM-IV-TR at 34.

Subsequently, in a letter dated July 11, 2012, Dr. Humphreys referred back to his December 2011 report, and listed his initial and final diagnoses and the types of testing conducted.  Dr. Humphreys opined:

> As described in more detail in the above referenced report, [M.M.B.] has
> qualitative deficits in reciprocal social interaction (A2a) and qualitative deficits in

---

[4] The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.  DSM-V at 16-17 (5th ed. 2013).  While the Social Security Administration continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.  Administrative Message 13066 ("AM-13066").

verbal and nonverbal communication (A2b).  This results in marked difficulty in maintaining social functioning (B2).  His prior diagnosis of ADHD, Inattentive Type results in marked difficulties maintaining concentration.

(AR 844.)

Because the record contained contradictory opinion from other physicians (*see* AR 28-30), the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence in the record for rejecting the opinions of Dr. Humphreys.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).   The ALJ agreed with Dr. Humphreys' opinion regarding concentration, finding it consistent with the evidence, including test results showing problems with hyperactivity and impulsivity, and cognitive tests showing deficits in the ability to sustain attention.  (AR 30.)  She gave little weight to Dr. Humphreys' opinion that plaintiff had "marked social deficits, because he does not explain how he arrived at this conclusion."  (*Id*.)  The ALJ further stated: "Moreover, Dr. Humphreys did not review any of the recent information from the school district, including the [Social Skills Improvement System (SSIS)] test results showing that the claimant's social skills were not marked but 'below average,' or the claimant's parent's rating of the claimant's behavior as 'average' for his age."  (*Id.* (citing AR 829-30).)

Plaintiff disputes the ALJ's assertion that Dr. Humphreys did not provide an explanation, arguing Dr. Humphreys based his opinion on his earlier, detailed December 2011 evaluation report.  However, plaintiff does not identify and the Court does not find any portion of Dr. Humphreys' report providing an explanation as to how the qualitative deficits identified amounted to a marked limitation in social functioning sufficient to establish the B criteria for Listing 112.10.  As reflected in the ALJ's decision, the October 2011 report from Dr. Humphreys included results inconsistent with such a conclusion, including ADI-R responses noting "some difficulties" in reciprocal social interaction.  (AR 29-30, 807-08.)  While the SRS responses from

plaintiff's mother placed plaintiff in the severe range for interference with social interactions across settings, the responses from both his father and teacher fell within the mild to moderate range and indicated deficits in reciprocal social behavior consistent with mild or high functioning autism spectrum conditions.   (AR 28, 808-09.)   Dr. Humphreys' own testing revealed "impairments" in social functioning, with no indication as to degree of such impairments, as well as other information detracting from a conclusion the degree of impairment satisfied the B criteria for Listing 112.10.   (AR 809 (noting plaintiff's "one long-standing friendship with another child" and motivation to have friends, but failure to "develop peer relationships appropriate to development level, and the parents' report that he displays emotional reciprocity, but that it was "not completely clear that social reciprocity" was present).)

The ALJ, as such, properly rejected Dr. Humphreys' opinion as to the B criteria based on the failure to provide any explanation.  *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); and *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").  *Cf.  Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).)  To the extent plaintiff disagrees with the ALJ's interpretation of the evidence from Dr. Humphreys, he fails to demonstrate that interpretation was unreasonable or irrational.   *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

/ / /

REPORT AND RECOMMENDATION - 8

Plaintiff next contends the ALJ erred in rejecting Dr. Humphreys' opinion on the grounds that the doctor did not review any of the recent information from the school district.  He points to the absence of any reason in the ALJ's decision as to why a clinical psychologist must review school psychological test results in order to diagnose a mental health or developmental disability condition, and no evidence in the record showing the failure to ask for and review school testing results "somehow violates the standard of care or required professional practices for a clinical psychologist who evaluates a minor patient who is attending school."  (Dkt. 33 at 7.)

Both consistency with the record as a whole and the extent to which a physician is familiar with other information in the case record are relevant factors to consider in deciding the weight to give a medical opinion.  20 C.F.R. § 416.927(c).  Contrary to plaintiff's suggestion, the ALJ did not find Dr. Humphreys was unable to render a diagnosis or provided insufficient medical care as a result of the failure to consider school testing results.  The ALJ, instead, reasonably considered that, at the time he rendered his July 2012 opinion, Dr. Humphreys was unaware of testing scores reflecting, at most, below average and average social skills.

Nor does plaintiff demonstrate error by pointing to Dr. Humphreys' consideration of the SRS responses obtained at the time of his December 2011 evaluation.  In fact, while his Mother's total response score and some individual portions of his teacher's responses support severe interference with social interactions, the responses from both his father and teacher as a whole supported only mild to moderate impairment, with some individual scores from his mother, in the areas of social awareness, social cognition, and social motivation, also falling within the mild to moderate range.  (AR 808.)  Moreover, in discussing these scores, Dr. Humphreys did not assign any greater value to plaintiff's Mother's scores or otherwise indicate that any of the scores supported a finding of marked social deficits.  The ALJ's interpretation of this evidence and the

REPORT AND RECOMMENDATION - 9

1    evidence in the record as a whole was rational.  *See Morgan*, 169 F.3d at 599.

2    B.    <u>Functional Equivalence</u>

3          As stated above, functional equivalence to a listed impairment requires a showing of

4    marked limitations in at least two of six functional domains or an extreme limitation in at least

5    one domain.  20 C.F.R. § 416.926a(a).  The six functional domains are (1) acquiring and using

6    information; (2) attending to and completing tasks; (3) interacting with and relating to others; (4)

7    moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-

8    being.  § 416.926a(b)(1)(i)-(vi).  A marked limitation "interferes seriously with [the child's]

9    ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2).  An extreme

10   limitation "interferes very seriously" with those things.  § 416.926a(e)(3).

11         The Commissioner considers test scores together with all other relevant information in

12   assessing whether there is a marked or extreme limitation within a particular domain.  §

13   416.926a(e)(1).  A limitation will be deemed "marked" if there is a valid score two standard

14   deviations below the mean "on a comprehensive standardized test designed to measure ability or

15   functioning in that domain, and [the claimant's] day-to-day functioning in domain-related

16   activities is consistent with that score." § 416.926a(e)(2)(iii).  A limitation in a domain will be

17   considered "extreme" if the same type of test score is three standard deviations or more below

18   the mean and consistent with the claimant's day-to-day functioning in that domain.  §

19   416.926a(e)(3)(iii).   However, test scores alone cannot establish a "marked" or "extreme"

20   limitation in a domain.  §§ 416.924a(a)(1)(ii), 416.926a(e)(4).

21         The ALJ found plaintiff had marked limitations in attending and completing tasks, but

22   less than marked limitations in interacting and relating to others, moving about and manipulating

23   objects, self-care, and health and physical well-being.  (AR 33-36 (also providing explanations as

REPORT AND RECOMMENDATION - 10

1    to considerations relevant to these domains).)  Plaintiff avers error in the failure to find extreme

2    limitations in attending and completing tasks and interacting and relating to others, or at least

3    marked limitations in both those areas and in the area of self-care.  The Court, for the reasons set

4    forth below, finds no error established.

5            In finding a marked limitation in attending and completing tasks, the ALJ pointed to

6    plaintiff's second grade teacher's observation of significantly elevated levels of hyperactivity,

7    attention problems, and anxiety, all affecting his classroom learning; IQ testing reflecting his

8    ability to sustain attention, concentration, and exert mental control were seen as weaknesses

9    relative to his nonverbal reasoning abilities; and the observation of a psychologist that he

10   appeared to have difficulty sustaining attention, requiring frequent prompts to continue tasks.

11   (AR 33.)  She added that, "by all accounts, [plaintiff's] attention and concentration improved

12   considerably in 2012, when he began treatment with the medication, Adderall."  (AR 33.)

13           In finding a less than marked limitation in interacting and relating to others, the ALJ

14   pointed to the Father's and teacher's responses on the SRS test, and acknowledged his Mother's

15   SRS responses, but noted plaintiff's own report of having two or three friends and his testimony

16   that he got along with other students at his school and had never been disciplined for his

17   behavior.  (AR 34.)  She also observed that, on a Behavior Rating Inventory Executive Function

18   (BRIEF) test, his "mother and father both rated [his] behavior problems in the average range,

19   indicating no concerns, despite some areas of struggle."  (*Id.*)

20           In considering plaintiff's ability to care for himself, the ALJ acknowledged the testimony

21   of plaintiff's mother that he required daily prompting to complete his homework and household

22   chores, declined to eat most foods or sleep in his own bed, and that his second grade teacher

23   noted he had serious problems identifying and asserting his emotional needs and knowing when

REPORT AND RECOMMENDATION - 11

1  to ask for help.  (AR 35.)  However, plaintiff's fourth grade teacher noted plaintiff "demonstrated

2  no deficiencies in caring for his physical or emotional needs in the school environment."  (*Id.*)

3        In support of his contention of an extreme limitation in attending and completing tasks,

4  plaintiff describes his overall score and individual scores on a May 2012 BRIEF test as more

5  than three standard deviations below the mean.  He points to his Mother's SRS responses and

6  one SRS response of his teacher as more than three standard deviations below the mean in areas

7  relevant to interacting and relating to others.  Finally, plaintiff states that test results from a May

8  2012 Behavior Assessment Scale for Children, Second Edition (BASC-2) contain scores that are

9  two standard deviations below mean in categories relevant to both interacting and relating to

10  others and self-care.  Plaintiff maintains that, based on these standardized tests alone, he should

11  be rated as having extreme limitations in attending and completing tasks and interacting and

12  relating to others and marked limitations in self-care.  He alternatively contends he satisfies these

13  standards "based upon all of the cumulative evidence."  (Dkt. 33 at 3-4.)

14        As the Commissioner observes, plaintiff failed to comply with two separate orders from

15  the Court (*see* Dkts. 21 & 32) in not including citations to the record associated with the test

16  scores he relies on in support of his arguments.  In any event, even assuming the scores support

17  the necessary deviations, test scores alone cannot establish either a marked or an extreme

18  limitation in any domain.  20 C.F.R. §§ 416.924a(a)(1)(ii), 416.926a(e)(4).  Plaintiff also fails to

19  point to evidence of day-to-day functioning activities related to any of these domains and

20  consistent with relevant test scores, as is necessary for a finding of an extreme or marked

21  limitation.  § 416.926a(e)(3)(iii).  Nor does plaintiff specify what other evidence in the record he

22  maintains would cumulatively allow for such a determination, or otherwise raise specific

23  challenges to the ALJ's interpretation of the evidence.

The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Plaintiff does not provide any legitimate basis for finding error in the ALJ's analysis or undermine the substantial evidence support for her conclusions. The ALJ's determinations are rational and should not be disturbed.

<u>Assessment of ADHD and Impact of Adderall</u>

Plaintiff's remaining assignments of error relate to the ALJ's consideration of the impact of Adderall medication. Plaintiff avers the ALJ erred in concluding his condition improved and he was no longer disabled when he started taking Adderall in March 2012. He argues, with no further discussion, that there "really is no substantial evidence in the record to show what effect the Adderall actually had on [him] – just a subjective conclusion." (Dkt. 33 at 7.) Plaintiff further contends that, even if he was no longer disabled after he began to take Adderall, the ALJ erred in not determining when his disability ceased and by not awarding benefits from his September 9, 2010 application date until the cessation of his disability.

Plaintiff misconstrues the ALJ's decision. The ALJ did not find plaintiff was no longer disabled once he began to take Adderall; she found plaintiff not disabled at any point in time since his application date. (*See* AR 36.)

Nor did the ALJ otherwise err in considering plaintiff's use of Adderall. In describing the medical evidence of record, the ALJ noted plaintiff began to take Adderall for his ADHD in March 2012 and, "by all reports, his concentration and attention improved significantly." (AR 29.) Plaintiff "was noted to be much more focused" and his teacher observed his "attention and completion of work greatly improved." (*Id*.) His teacher also reported a marked improvement in his reading assessment, including a jump from the "22nd percentile of the national norm to the

REPORT AND RECOMMENDATION - 13

52nd percentile, placing his reading assessment just above the national average for his grade level." (*Id.*)  In addition, plaintiff testified at hearing that, since starting this medication, "he has been doing well keeping up with homework, and that his grades were all 'A's,' with the exception of science, in which he earned a 'B-minus.'" (*Id.*)  The ALJ thereafter reasonably noted, in finding a marked limitation in attending and completing tasks, that plaintiff's attention and concentration improved considerably in 2012, when he began taking Adderall.  (AR 33.) Plaintiff does not present and the Court does not find any error in this assessment.

## CONCLUSION

This matter should be **AFFIRMED**.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 21, 2016**.

DATED this 6th day of October, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14